Horn's Motor Express, Inc., Appellant, *v.* Pennsylvania Public Utility Commission.

Argued December 9, 1941.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Rhodes, Hirt and Kenworthey, JJ.

*Edmund C. Wingerd,* for appellant.

*E. Mode Vale,* for intervening appellant.

*Frederick L. Kiger,* with him *Harry M. Showalter,* for appellee.

*Richard V. Zug,* of *Shertz & Zug,* for intervening appellee.

Opinion by Kenworthey, J., April 15, 1942:

Horn's Motor Express, Inc. has taken an appeal, in

which Daily Motor Express, Inc. joins as intervening appellant, from an order of the Public Utility Commission granting a certificate of public convenience to Horlacher Delivery Service, Inc. (now Highway Express Lines, Inc.), intervening appellee.

In granting certificates of public convenience, the Public Utility Commission performs a purely legislative function. It exercises a power delegated to it by the legislature to grant franchises. The Legislature's declared policy furnishes the limitations upon the performance of the function. Article II, Sec. 203 of the Public Utility Law [1] provides that the commission must "find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public." The power of this court to review an order of the commission is limited by Article XI, Sec. 1107, as amended by Act of July 3, 1941, P. L. 267, Sec. 3, 66 PS 1437, as follows: "The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination or order of the commission, or violation of constitutional rights."

The finding of the commission was as follows: "From a consideration of all of the evidence we find and determine that approval of the application before us is necessary or proper for the service, accommodation and convenience of the public." There was a full compliance with the procedural requirements of the law. It is not contended that the order is in violation of constitutional rights. Our sole inquiry is whether there was "substantial evidence with rational probative force supporting the findings." *Modern Transfer Co., Inc. v. Pennsylvania Public Utility Commission et al.,* 139 Pa. Superior Ct. 197, 207, 12 A. (2d) 458; *Cole et al. v. Pennsylvania Public Utility Commission,* 146 Pa. Superior Ct. 257, 22 A. (2d) 121. We are not per-

---

[1] Act of May 28, 1937, P. L. 1053, 66 PS 1123.

mitted to exercise our independent judgment nor to weigh conflicting evidence. *Ryan et al. v. Pennsylvania Public Utility Commission,* 143 Pa. Superior Ct. 517, 525, 17 A. (2d) 637; *Cheltenham & Abington Sewerage Co. v. Pennsylvania Public Utility Commission,* 146 Pa. Superior Ct. 274, 283, 22 A. (2d) 37.

Horlacher Delivery has, for some time, operated an extensive motor trucking business under various certificates issued to it by the Public Utility Commission, and its predecessor, the Public Service Commission. At the time its application for the present certificate was filed, it was operating interstate under certain certificates issued to it by the Interstate Commerce Commission. Since 1932, it has maintained an overnight delivery service from points in the Metropolitan Philadelphia Area[2] to the Cumberland Valley,[3] but these certificates limited it to the transportation of such commodities as motion picture films, newspapers, frozen foods, dated coffee, yeast, frozen eggs, bacon, and malt and cereal products for Standard Brands and Anheuser-Busch Company. The order appealed from extends its franchise to the transportation of property generally.[4]

There were nine protestants: Pennsylvania Railroad

---

[2] Which includes parts of Delaware, Chester, Montgomery and Bucks Counties.

[3] The territory involved comprises portions of Adams and Franklin Counties, roughly included in a triangle made by drawing a line from Harrisburg to Greencastle, from Greencastle to Lancaster and from Lancaster to Harrisburg. The reader of this opinion will find that a good road map of the territory will materially assist in understanding the facts.

[4] The scope of the order is as follows: "(a) To transport property, excluding household goods in use, as a Class D carrier, from points in the City and County of Philadelphia and points in the territory bounded by and including the following places: Marcus Hook, Cheyney, Delaware County, Perkasie, Doylestown, Rushland, Newtown, Morrisville, Bucks County, the Delaware River, to the Borough of Mount Holly Springs, Cumberland County, and points on the following routes and points within a

Company, Reading Company, Alko Express Lines, Inc., Horn's Motor Express, Inc., Daily Motor Express, Inc., Motor Freight Express, Inc., York Motor Express, Adams Transit Co., Inc., and Harshman Daily Motor Express. One of the appellants, Daily Motor Express, operates a comparatively short line service out of Harrisburg to Carlisle, thence south on Pennsylvania routes 34 and 94 to Mount Holly Springs, and also west from Carlisle on Pennsylvania route 641 to Newville. The other appellant, Horn's Motor Express, operates from Harrisburg along U. S. route 11, through Carlisle, Shippensburg and Chambersburg, to Greencastle. Since there is no appeal by anyone "affected. thereby," [5] the order of the Commission must, in any event, be affirmed, except as to the portion of it which extends Horlacher's franchise to points on and within a radius of five miles on either side of U. S. route 11 between Harrisburg and Greencastle.

In our opinion, the order must be affirmed in its entirety.

Appellants' concern over the proposed extension of Horlacher's franchise results from the fact that they now enjoy a substantial amount of the local end of business from and to Philadelphia by interchange at Harrisburg with Motor Freight Express, Inc., which operates between Harrisburg and Philadelphia. [6]

Horlacher's proposed service is an overnight service

---

radius of five miles on either side of the following routes and vice versa, excluding the city of Harrisburg, between Harrisburg and Greencastle via Highway Route 11, between Harrisburg and Gettysburg via Highway Route 15, between Gettysburg and Chambersburg, via Highway Route 30, and between Gettysburg and Greencastle, via Highway routes 116 and 16, Fountain Dale, thence via Highway Route 16 ......"

[5] Article XI, Sec. 1101, Act of May 28, 1937, P. L. 1053, 66 P.S. 1431.

[6] Daily Motor Express, Inc. also handles some of the pickup and delivery service for the Reading Company.

in both directions between the Philadelphia area and points in the Cumberland Valley, with pickups at both ends as late as five o'clock in the afternoon and with early morning deliveries. The commission, in its opinion, states that: "The applicant's financial responsibility or its fitness and ability to render the proposed service was not questioned by the protestants." Appellants do not raise any of these questions here. But they insist that the existing service is an overnight service and that it is not only adequate, but there is no evidence to support a finding that the improvement in the service which Horlacher proposes is one that is demanded by convenience or necessity. That the existing service *purports* to be an overnight service, whether by Motor Freight Express or by rail, is pretty clear from the evidence. If it were *in fact* an overnight service and the only benefit to the public offered by Horlacher's proposed service were the saving of a few hours in total transportation time resulting from a somewhat later pickup and earlier delivery, we would, on this record, find it difficult to sustain the order. Because, practically all of the witnesses called by Horlacher indicated that when they actually got overnight service, they were satisfied with it in spite of the fact that deliveries were a few hours later than Horlacher proposes to make them. And some of the witnesses admitted that they occasionally got overnight service. But there was a substantial amount of testimony that ordinarily orders did not reach them from the Philadelphia area until the second or even the third day. The explanation for the delay may be that lay-overs resulted from inadequate coordination of operating schedules between the two or three carriers involved in the existing service. But the point is, regardless of the explanation and regardless of the fact that the existing service may be theoretically an overnight service, the testimony of witnesses, whose credibility was for the commission, indicated that it was not.

Having established that the proposed service would be an overnight service and that the existing service is not, the only remaining question is whether the proposed service would be "necessary or proper for the service, accommodation and convenience of the public." A number of witnesses said it would for reasons which they gave and which seem plausible. The proposed service need not be necessary in the sense that it is indispensable. *Benkart & Sons Co. v. Pennsylvania Public Utility Commission*, 137 Pa. Superior Ct. 5, 9, 7 A. (2d) 584. And since there is testimonial evidence, we need not go so far in this case, as to hold that some such evidence is not required, but there are cases, of which this is one, in which a descriptive comparison between the existing and the proposed services is of itself evidence that the proposed service would be an accommodation or a convenience to the public. When Pullman first designed his railroad sleeping car, a descriptive comparison between it and the then existing facilities would have gone a long way toward proving that it was an accommodation and convenience for the traveling public. And so here, from the facts found by the Commission and supported by substantial evidence, the public were offered an overnight service, with late pickups and early morning deliveries of goods, handled throughout by a single carrier in place of, or in complement of, an existing interchange service, which, although theoretically an overnight service, is more often in fact a two or three day service. We have no difficulty in concluding that, once having resolved, as it did, the conflicting evidence, the Commission's ultimate finding of accommodation and convenience was foregone.

The appeal is dismissed as to both appellants and the order of the Commission is affirmed.