Hall's Motor Transit Company, Appellant, *v.* Pennsylvania Public Utility Commission et al.

Argued March 12, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, RHODES, HIRT and KENWORTHEY, JJ.

*Mark E. Garber,* for appellant.

*Herbert S. Levy,* with him *Harry M. Showalter,* for appellee.

*Gilbert Nurick,* with him *James H. Booser* and *Sterling G. McNees,* for intervening appellee.

OPINION BY KENWORTHEY, J., July 23, 1942:

Hall's Motor Transit Company (hereafter called Hall's) appeals from an order of the Public Utility Commission extending and enlarging the certificate of public convenience of Follmer Trucking Company (hereafter called Follmer), intervening appellee.

Prior to filing the present application, Follmer operated a rather extensive intrastate motor trucking business. Its principal route was from Lock Haven to Philadelphia, via Williamsport, Muncy, Northumberland, Sunbury, Shamokin, Mt. Carmel, Pottsville, Allentown and Reading. It also operated several auxiliary or spur lines, the principal one of which was from Sunbury to Berwick, via Danville and Bloomsburg. It also operated over an alternate route from Sunbury to Philadephia, via Harrisburg and Lancaster. For the purpose of considering the present appeal, it may be said that it transported property generally except "between points located on the certificated routes of Hall's Motor Transit Company, Inc."

Hall's also operated a rather extensive intrastate motor trucking business. Its principal routes were from Scranton to York, via Wilkes-Barre, Berwick Bloomsburg, Danville, Sunbury and Harrisburg, and from Williamsport to York, via Sunbury and Harrisburg. It also operated an auxiliary or spur route between Sunbury and Lewistown.

By virtue of the protection given to it by the restriction in Follmer's certificate, Hall's enjoyed a virtual monopoly in the motor trucking business be-

tween points along its routes.[1]   There were a large
number of protestants to the present application.[2]   All
of them, except Hall's acquiesced in the order.   The
only portion of the order in question, therefore, is that
which removed Follmer's restrictions to transport be-
tween points along Hall's routes, and which extended
.Follmer's certificate to new routes, giving it the right
to compete with Hall's between Berwick and Scranton,
via Wilkes-Barre, and between Harrisburg and York.

The order is challenged, principally on two grounds:
(1) That there is no evidence to support the Commis-
sion's finding of public necessity or convenience; and
(2) that the Commission erroneously failed to consider
improvements in Hall's service made after Follmer's
application was filed.

(1)   We have so recently stated the pertinent legal
principles that it is unnecessary to repeat them *(Horn's
Motor Express Co., Inc. v. Pennsylvania Public Utility
Commission,* 148 Pa. Superior Ct. 485, 26 A. (2d) 346).
Numerous witnesses complained about the efficiency of
Hall's service.   This evidence established that pickups
in Scranton were made no later than two-thirty to
three P.M.; in Wilkes-Barre, no later than three-thirty
to four P.M.; on Saturday Hall's refused to make any
pickups whatever.   Regular pickups were made in
Harrisburg not later than four-thirty, and numerous
witnesses testified that, although Hall's service was an
overnight service, deliveries were made late in the
morning, in some places nine to ten o'clock.   And,

---

[1] Reading Transportation Company competed between Wil-
liamsport and Harrisburg and William G. McCormick operated
trucks four trips per week between Scranton and Sunbury.

[2] New York Central Railroad Company, The Pennsylvania
Railroad Company, M. A. Clark, Hall's Motor Transit Company,
Inc., William G. McCormick, Arrow Carrier Corporation, Read-
ing Company, Reading Transportation Company, Karn's Trans-
fer, Inc., Horlacher Delivery Service, Inc., Motor Freight Ex-
press, Inc., and York Motor Express Company.

unlike the witnesses in *Horn's Motor Express Co., Inc. v. Pennsylvania Public Utility Commission,* supra, the witnesses testified that the later pickups (five-thirty to six P.M.) and the earlier deliveries (seven A.M. to eight A.M.) proposed by Follmer would effect a material improvement in the service. There were other minor complaints about the existing service. A number of witnesses shipped between points on Hall's routes and points on Follmer's existing routes reached, through Hall's, only by interchange, which often resulted in second-day service. These witnesses testified it would be a convenience to have a through service by a single carrier. In addition, if the part of the order removing the restrictions along Hall's routes were struck down; the effect would be virtually to nullify other parts of the order granting Follmer additional spur routes. Follmer was given a new line from Millville to Bloomsburg and an alternate route between Berwick and Bloomsburg through Nescopeck and Catawissa. These grants were made largely on the testimony of witnesses who wanted to ship goods to points along Hall's route. Unless the order is sustained in its entirety, the purpose of these additional spurs would be defeated. A similar situation exists with regard to a spur from Sunbury to Mifflinburg and Montandon.

The number of competing carriers to be permitted in a given territory is primarily a matter for the discretion and sound judgment of the Commission. The Commission said: "A careful consideration of the record convinces us that there is a substantial demand for service which is not now adequately handled by the one available carrier. The territory here under consideration includes a number of large industrial centers, between which tonnage flows in a considerable volume. We must provide such motor carrier facilities as will insure a free and uninterrupted flow of traffic. This can be done only by allowing a limited amount of competitive motor carrier service under our regulation."

A consideration which undoubtedly moved the Commission to enlarge Follmer's certificate was the fact that it has been driving its trucks with closed doors through many miles of territory it is entirely qualified to serve and containing many people who want the service. *Modern Transfer Co., Inc. v. Pennsylvania Public Utility Commission,* 139 Pa. Superior Ct. 197, 203, 12 A. (2d) 458.

In our opinion, there is ample evidence to support the finding that the granting of the certificate was "necessary or proper for the service, accommodation, convenience, or safety of the public." Act of May 28, 1937, P. L. 1053, art. II, sec. 203, 66 PS 1123.

(2) Either because of numerous complaints or because of the application filed by Follmer, Hall's, at approximately the time at which the application was filed, improved its service in the territory around Scranton. In its brief, Hall's says: "It was recognized that the service out of Wilkes-Barre and Scranton was not as good as it should be and schedules were rearranged so that later pick-ups in both of these places could be made. It was soon found that to give a completely satisfactory service in Scranton it was necessary to have a terminal there, in addition to the terminal at Wilkes-Barre, and such a terminal at Scranton was opened." By way of excusing the poor quality of its service, it is pointed out that the company was adjudged bankrupt in 1938; that the present owners purchased it from the trustee in bankruptcy in April 1939; that the business was badly run down prior to the bankruptcy and was likewise in a run-down and neglected condition at the time it was acquired by the present owners; and that the present owners have been making the necessary improvements as rapidly as possible. This amounts, in effect, to a plea of confession and avoidance. Addressing itself to the argument based upon these facts, the Commission said: "Consideration cannot be given to a

66

carrier who has not been giving the public service to which it is reasonabl[y] entitled, until another enterprising carrier seeks to render competitive service in the manner demanded by the shipping public."

"We think that one of the weapons in the Commission's arsenal is the right to authorize competition where it is necessary in order to compel adequate service ......" BIGGS, J., in *Davidson Transfer & Storage Co. v. United States,* 42 F. Supp. 215, 219 (D. C. Pa.). "...... the legislature has entrusted [to the Commission] the duty of determining who and how many shall serve a given area. It requires proof of an unusual situation before we are warranted in interfering with the duties so entrusted to the commission." PARKER, J., in *Modern Transfer Co., Inc. v. Pennsylvania Public Utility Commission,* supra at 203. We find no abuse of its discretion.

Nor do we find any merit in the argument that the Commission was bound to order Hall's to increase or improve its service rather than permit a competing carrier to enter the field. See *Davidson Transfer & Storage Co. v. United States,* supra.

The appeal is dismissed and the order affirmed.