Alko Express Lines, Appellant, *v.* The
Pennsylvania Public Utility Commission

Argued October 27, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*James H. Booser,* with him *McNees, Hollinger & Nurick,* for appellant and intervening appellant.

*L. K. Connell,* with him *H. Z. Maxwell,* for intervening appellant.

*Richard V. Zug,* of *Shertz & Zug,* for intervening appellants.

*Frederick L. Kiger,* with him *Albert E. Luttrell, Harry M. Showalter* and *Claude T. Reno,* Attorney General, for appellee.

*W. G. Johnstone, Jr.,* with him *Nathan Markman* and *William J. Wilcox,* for intervening appellee.

OPINION BY BALDRIGE, J., January 28, 1943:

The Lancaster Transportation Company, hereinafter called the Lancaster Company, which had been authorized previously to transport property between Lancaster and Philadelphia, applied to the Pennsylvania Public Utility Commission for a certificate of public convenience to transport property as a common carrier between Lancaster and Pittsburgh and also between Philadelphia and Pittsburgh and vice versa, and certain intermediate points. Alko Express Lines, Clark-Callahan, Inc., Kramer Brothers Freight Lines, Inc., Philadelphia-Pittsburgh Carriers, Inc., and the Pennsylvania Railroad protested the granting of this application.

Numerous hearings were held between May 24 and December 14, 1940. The commission did not issue its order until December 16, 1941, when it granted the Lancaster Company, as a class D common carrier, the right to transport property between Lancaster and Pittsburgh and vice versa, but refused to grant that part of the application which sought the right to transport property between Philadelphia and Pittsburgh.

On January 5, 1942, the Lancaster Company petitioned for rehearing averring that between the date of the final hearing and the commission's order conditions had materially changed so that the testimony did not accurately reveal the situation then existing as in the interim war had been declared by this country and defense activities had increased greatly the needs for the transportation facilities between Philadelphia and Pittsburgh areas and that its service was necessary for the accommodation and convenience of the public. An answer was filed thereto by the Alko Express Lines. The commission on February 16, 1942 ordered a rehearing. Additional testimony was taken on the part

of the petitioner but the protestants, although represented by counsel, offered none in reply. The commission on July 27, 1942 handed down an order rescinding a part of its former order and granted the Lancaster Company the right to transport property between Philadelphia and Pittsburgh and vice versa.

The Lancaster Company filed its tariff and on August 20, 1942 began operations in the new areas. Following an appeal by the Alko Express Lines, in which the other protestants above named intervened, we granted a rule to show cause why a supersedeas should not be granted, which was made absolute September 28, 1942, in respect to the order of July 27, 1942.

The Lancaster Company insists that this appeal taken August 28, 1942, is too late to affect the order of December 16, 1941. Section 1006 of the Public Utility Law of May 28, 1937, P. L. 1053, Article X, 66 PS §1396, provides that after an order has been made by the commission any party to the proceeding may within 15 days after service of the order apply for a rehearing. Section 1101, Article XI, 66 PS §1431, provides: "(a) Within thirty days after the service of any order by the commission, unless an application for a rehearing may be pending, and then within thirty days after the service of the order refusing such application, or the service of an order modifying, amending, rescinding, or affirming the original order, any party to the proceedings affected thereby may appeal therefrom to the Superior Court."

The Lancaster Company, within the fifteen day period, petitioned for rehearing which was, as above observed, granted February 16, 1942. The present appellants were required to await the *final* order of the commission which was handed down on July 27, 1942. The petition for rehearing having been pending until that date the appellants had thirty days after that order was issued and served to take an appeal. The date of service of the

order does not appear in the record before us but it is not alleged that the appeal was not taken within thirty days of the date of the service. The appeal was taken in time. We will consider the merits of this case.

Appellants contend that the commission's order granting the Lancaster Company rights to transport between Philadelphia and Pittsburgh is invalid because (1) the record is devoid of "substantial evidence having rational probative force" to support the commission's findings; (2) the commission failed to make sufficient detailed findings of basic facts to support its conclusions; and (3) the commission erred in taking judicial notice of the general effect of war time conditions upon intrastate transportation facilities between Philadelphia and Pittsburgh without having any specific evidence in support thereof and depriving the appellants the right to cross examine and present rebutting evidence.

The source of our authority to review orders of the Pennsylvania Public Utility Commission is set forth in section 1107 of the Public Utility Law of 1937, supra, 66 PS §1437, reading as follows: "Any appeal to the Superior Court shall be determined upon the record certified by the commission to the court ...... The order of the commission shall not be vacated or set aside, either in whole or in part, except for error of law or lack of evidence to support the finding, determination, or order of the commission, or violation of constitutional rights."

It must be borne in mind that the ultimate order was not based only on testimony taken at the time of the rehearing, but at the several previous hearings. Fourteen witnesses testified as to the need of overnight truck service between Pittsburgh and Philadelphia. Some of these witnesses stated that this type of service with late pick up and early morning deliveries had been promised by one or more of the intervening appellants but that those promises were not fulfilled. It is true that the

four motor carriers, intervening appellants, by orders dated September 30, 1940, October 1, 1940, November 2, 1940, and March 23, 1942, (the last date being sub- . sequent to the Lancaster Company's petition for a rehearing) were authorized as common carriers to transport property by trucks between Philadelphia and Pittsburgh, thus showing the need of additional service between these points. Our attention was directed to the fact that on October 1, 1940, the Pennsylvania Turnpike was opened, which is a more direct route and its use greatly reduces the running time of trucks between those two points.

At the rehearing the president of the applicant company testified that he had made extensive surveys to determine the needs of the shipping public and that he found after we entered the war a marked increase in production which enlarged demands for, and placed additional burdens on, transportation facilities. The applicant, when the original hearings were had, owned and operated fifteen tractors, twenty-two trailers, and eleven straight trucks and it intended to add more equipment if the application was approved. An overnight service was planned between Philadelphia and Pittsburgh with early morning deliveries and pick ups, which were to be made by its own trucks or by interchanging with other common carriers. The president of the Lancaster Company testified also that his company could operate more economically if it had the right to haul freight west from Philadelphia to Pittsburgh thereby "balancing its operations" of heavy shipments from Pittsburgh to Lancaster and prevent the necessity of sending empty trucks to Pittsburgh. Economy of operation by a common carrier is a proper matter for the commission's consideration. True, the interest of the public, rather than that of a carrier, is paramount, nevertheless it is the duty of the commission to consider economy of operation: *Modern Trans-*

*fer Co., Inc. v. Pennsylvania Public Utility Commission et al.,* 139 Pa. Superior Ct. 197, 202, 204, 12 A. 2d 458. This is especially true at this time with acute shortages in our gasoline and rubber supplies. It follows that promoting a common carrier's economic operations is to the public's interest.

The applicant's general traffic manager testified that the company had received numerous calls and requests including those from their customers desiring to make shipments from Philadelphia to Pittsburgh and vice versa. This testimony was admissible and its weight was for the commission: *Modern Transfer Co., Inc. v. Pennsylvania Public Utility Commission et al.,* supra, p. 204.

The appellant carriers denied the necessity of additional truck service. They produced testimony that their companies had ample equipment to meet all the demands and that at times their trucks were idle or running with only partial loads. We cannot say in the face of these disputed material facts that there was not "substantial evidence having rational probative force" to support the findings and warrant the commission in concluding that it was to the interest of the public that the applicant be granted the additional rights which it sought.

As we pointed out, speaking through Judge RHODES, in *John Benkart and Sons Co. et al. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 5, 9, 7 A. 2d 584: "It was not necessary for the commission to find that the service of the applicants was absolutely indispensable, and we cannot say that there was no evidential support for a finding that applicants' service was reasonably necessary for the accommodation or convenience of the public."

To what extent there should be competition among intrastate common carriers is primarily a matter of policy which the legislature has committed to the sound

discretion and judgment of the commission, and its decision will not be disturbed by the court unless it is so capricious, arbitrary, or unreasonable as to amount to an error of law: *Beaver Valley Service Company v. Public Service Commission et al.*, 122 Pa. Superior Ct. 221, 186 A. 304; *John Benkart & Sons Co. et al. v. Pennsylvania Public Utility Commission*, supra, p. 17; *Hall's Motor Transit Company v. Pennsylvania Public Utility Commission*, 150 Pa. Superior Ct. 60, 27 A. 2d 428.

Here, as in *Horn's Motor Express Inc. v. Pennsylvania Public Utility Commission*, 148 Pa. Superior Ct. 485, 26 A. 2d 346, the appellants insist that the existing overnight service is adequate. We held there that our only inquiry was whether there was substantial evidence to support the finding; that we could not exercise our independent judgment or weigh the conflicting evidence and therefore affirmed the commission's order. See, also, *Ryan et al. v. Pennsylvania Public Utility Commission*, 143 Pa. Superior Ct. 517, 525, 17 A. 2d 637. The facts adduced were sufficient for the commission to determine if additional service was necessary for the accommodation and convenience of the public.

We come now to the second contention, namely, that the findings of the commission were not sufficiently specific to support its conclusions. In its order of July 27, 1942, the commission after discussing the evidence and the contentions of the respective parties, stated: "After a careful analysis and consideration of all the evidence in this record, we find and determine that the proposed service between the Philadelphia and Pittsburgh Metropolitan areas is necessary or proper for the service, accommodation and convenience of the public; ......"

Section 1005, Article X, of the Public Utility Law of 1937, supra, 66 PS §3195, requires that the commission's "findings shall be in sufficient detail to enable

the court on appeal, to determine the controverted question presented by the proceeding, and whether proper weight was given to the evidence." *Baltimore and Ohio Railroad Company et al. v. Pennsylvania Public Utility Commission,* 135 Pa. Superior Ct. 20, 24, 4 A. 2d 628. It is always commendable for the commission to set forth the controlling facts and the reasons for the conclusions reached with sufficient particularity so that courts may fully understand the foundation upon which rests the commission's order. In this instance the primary findings might well have been more specific but we had no real difficulty in determining the important facts which apparently influenced the commission to make its final order. It is not necessary to make as detailed findings in a case of this character as in a rate case: *Pennsylvania Power and Light Company v. Public Service Commission et al.,* 128 Pa. Superior Court. 195, 193 A. 427. We think the findings of the commission were adequate.

The appellants' final complaint is that the commission erred in reversing its former order and taking judicial notice of the effect of war production upon transportation problems. The commission's order included the following statements: "Our original order was prepared and issued at or about the time that the United States entered the war, at which time the unlimited production capacity of the industries of this nation was not in high gear. However, it is a matter of common knowledge that the increase in production, particularly of war materials, during the past seven months has been phenomenal. We must take cognizance of the fact that this rapid increase in production has naturally resulted in greater demands and burdens on existing transportation facilities ..... We must also consider the orders of the United States Office of Defense Transportation to conserve tires and equipment and to eliminate waste in operations. The applicant is

presently authorized to render service between Philadelphia and Lancaster, and also between the Lancaster and Pittsburgh areas; ...... the applicant operates daily over the entire proposed route between Philadelphia and Pittsburgh, but is not permitted to transport property between said points ...... The grant of the present application will have the salutary effect of a fuller utilization of applicant's equipment, so necessary under wartime conditions."

Administrative bodies, as well as courts, may take judicial notice of a depression and as a concomitant general decline in the markets, or of boom times with attending increases in transportation of goods etc. They are matters of common knowledge. But the doctrine of judicial notice may not be carried to such an extent as to make it impossible to determine upon what evidence the commission based its findings; that would result in the denial of due process. See *Ohio Bell Telephone Company v. Public Utilities Commission,* 301 U. S. 292, 301, 302, 57 S. Ct. 724, 729. Here the commission took cognizance of conditions existing generally. In so far as the commission's order was based on judicial notice that doctrine was confined within its proper limit. It is not expected that the commission must close its eyes and be ignorant of existing conditions of which we are all aware. They did not attempt, however, to definitely state the extent or exact amount of these greater demands which would require proof to support such a finding.

The case of *Ohio Bell Telephone Company v. Public Utilities Commission,* supra, upon which the appellants rely, does not in our judgment convict the commission of error. Furthermore, the commission's order was supported by testimonial evidence covering the same conditions of which the commission took judicial notice. It was clearly apparent from the testimony of the applicant's president that his company as a basis for the

additional rights it applied for relied upon the changed and increased demands for transportation. After this testimony was admitted the protestants were given an opportunity to refute it but they chose apparently to rely on the record as it stood and stated they had no further testimony to offer: *Hoffman et al. v. Public Service Commission*, 99 Pa. Superior Ct. 417, 428.

On the evidence before us, including facts regarding transportation known to everyone, we cannot say that the certification of a fifth motor truck carrier between Philadelphia and Pittsburgh was erroneous as a matter of law because unsupported by the necessary evidence. The problem presented was purely an administrative one.

The order of the commission is affirmed at appellants' costs.