Shenandoah Suburban Bus Lines, Inc., Case.

Argued October 23, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*James J. Gallagher,* for appellant.

*H. Ray Pope, Jr.,* with him *Vincent P. McDevitt* and *James H. Duff,* Attorney General, for Pennsylvania Public Utility Commission, appellee.

*Paul H. Rhoads,* with him *John Fox Weiss* and *Weiss & Rhoads,* for Schuylkill Transit Co., intervening appellee.

OPINION BY ROSS, J., March 14, 1946:

On June 22, 1931, the Shenandoah Suburban Bus Lines, Inc., hereinafter known as the company, was authorized by the commission to transport persons for hire on a prescribed route from Shenandoah to Shenandoah Heights in Schuylkill County, Pennsylvania. Later the right was extended to include similar service to Weston Place. The travel distance between terminals on the certified route is 2.1 miles, and the route travelled is along a grade approximating nine degrees at its steepest point. Busses are scheduled at one-half hour intervals from 5:30 a.m. to midnight, and one bus in operation would meet schedule requirements.

On February 26, 1945, the commission issued its own rule to show cause why the certificate of the company "should not be cancelled or other penalties imposed for failure to furnish and maintain adequate, efficient and reasonable service and facilities required by Section 401 of the Public Utility Law". The rule recited that after several informal complaints "concerning the adequacy of the service" had been received by the commission, a field investigation was made on February 15, 16, 1945. The company filed an answer as required, and

the matter came on for hearing April 20, 1945, at Potts-ville, before an examiner of the commission.

On June 11, 1945, the commission made its order cancelling the certificate, effective July 18, 1945. On July 2, 1945, the company filed a petition for a rehearing and the petition was denied July 9, 1945. The company ceased operating in accordance with the order of the commission at midnight July 18, 1945, and service was restored by the commission July 23, 1945, when a temporary privilege was granted to the Schuylkill Transit Company.

On July 24, 1945, the company filed its petition for an appeal and supersedeas, and this court, after hearing August 8, 1945, made an order allowing the supersedeas pending the determination of the appeal. The company resumed its operations on August 9, 1945, and continues to operate in competition with the Schuylkill Transit Company, whose right to operate has not been terminated by the commission.

In the case at bar the appellant is seeking to have reversed an order of the Pennsylvania Public Utility Commission which cancelled the appellant's certificate of public convenience, for the reason that the appellant had failed to furnish and maintain adequate, efficient and reasonable service and facilities. The finding of the commission was as follows: "After full consideration of all matters and things involved, we are of the opinion and find that Shenandoah Suburban Bus Lines, Inc., failed to furnish and maintain adequate, efficient, safe and reasonable service and facilities during periods between December 15, 1944, and March 6, 1945; that between March 6 and April 20, 1945, partial service was provided through the facilities of another carrier; that the equipment of respondent is not adequate for the rendition of service and that the certificate of public convenience issued by us for such service should now be cancelled."

The function of this court on appeal is to determine whether there is error of law ". . . or lack of evidence

to support the finding, determination or order of the commission . . ." Section 1107 of the Public Utility Law of May 28, 1937, P. L. 1053 as amended, (66 PS 1437). On this latter phase the sole inquiry is "whether there is substantial evidence with rational probative force in the record to support the findings of fact and the order of the commission". *Leaman Transportation Corp. et al. v. Pennsylvania Public Utility Commission*, 153 Pa. Superior Ct. 303, 33 A. 2d 721; *Modern Transfer Co. Inc., v. Pennsylvania Public Utility Commission et al.*, 139 Pa. Superior Ct. 197, 12 A. 2d 458; *Cole v. Pennsylvania Public Utility Commission*, 146 Pa. Superior Ct. 257, 22 A. 2d 121. In *Modern Transfer Co. Inc., Appellant, v. Pennsylvania Public Utility Commission et al.*, 139 Pa. Superior Ct. 197, 12 A. 2d 458, supra, at page 207, this court, speaking through the late Judge PARKER, stated: "While we recognize the force to be given to the findings of a tribunal to which has been delegated by the constitution or the legislature the responsibility for determining questions of fact and, particularly, the pertinent provisions of Section 1107 of the Public Utility Law (Act of May 28, 1937, P. L. 1053; 66 PS 1437) prescribing our powers on appeal, nevertheless the comment of the Supreme Court in Consolidated Edison Co. v. National L. R. Board, 305 U. S. 197, 229, 230, 59, S. Ct. 206, where a comparable situation was presented and the duties of quasi judicial tribunals were being considered, is pertinent to the question now being examined. That court said: 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force.' " And in *Wilbert v. Commonwealth, Second Injury Reserve Account et al.*, 143 Pa. Superior Ct. 37, at page 48, this court, speaking through the late President Judge

KELLER, stated: ". . . since the opinion of Mr. Justice STONE, speaking for the Supreme Court of the United States in *National Labor Relations Board v. Columbian Enameling and Stamping Co.*, 306 U. S. 292 (1939) it has been generally recognized by the courts, including this court, that when a statute declares that the findings of fact of an administrative board, if supported by evidence, shall be conclusive, it means evidence that is substantial—that is, evidence affording a substantial basis of fact from which the fact in issue can reasonably be inferred."

From an examination of the record in this case we are convinced that the evidence does not meet the tests laid down above and that it is not "substantial evidence with rational probative force" to support the findings and order of the commission.

A number of witnesses, called on behalf of the commission, testified as to lack of scheduled service during parts of numerous days between December 15, 1944 and March 4, 1945, and from a reading of their testimony it is clear that the service rendered by the company was not satisfactory to the public, but the question in this case is whether or not *under the circumstances* the services provided were adequate, efficient and reasonable.

A witness for the company, Miss Brennan, its office manager, testified that the company's records showed the following interruptions of service: January 1, 6:15 a.m. to 10 a.m.; January 8, 9 p.m. to 12 p.m.; January 16, 6:30 a.m. to 8:30 a.m.; February 18, all day; February 20, 12 p.m. to 3 p.m.; March 5, 4:30 p.m. to 7 p.m.; and she testified that on the above days the roads were blocked with snow or covered with sleet or ice, that chains were required and that the difficult transportation problem of the company was greatly increased by road conditions, thus causing motor breakdowns and schedule delays. A commission witness, John H. Kinsinger, who made a field investigation on February 15

and 16, 1945, testified that he checked scheduled busses on those dates and found them leaving on schedule from each end of its run; that the company's equipment consisted of a Ford 20-passenger bus, a White 16-passenger bus, and a Mack 33-passenger bus, the latter two being in the garage undergoing repairs. He also testified that as an engineer he knows that it was difficult to procure the necessary parts to repair the busses.

Miss Brennan testified that the White bus was a used bus acquired in 1941; that later in the same year the Ford bus, a new bus, and in 1943 the Mack bus, a used bus, were acquired. She testified further that in the latter part of 1942 an application for permission to purchase a new bus was refused by the Office of Defense Transportation, and that thereafter the company purchased the Mack bus. She testified that the Mack bus went out of service in May 1944 and the White bus in December 1944, and that the company made an extensive effort in Pennsylvania, Washington, New Jersey and as far west as Chicago to secure repair parts for the motor busses, and that the company even contacted junk dealers throughout the territory, but was unable to secure the required parts until shortly after February 14, 1945, when the parts were finally secured, and at the time of the hearing the repairs were in progress. The company called a witness, Bailey, general manager of the Schuylkill Transit Company, who testified that the run of the company is over a grade of "approximately nine to nine and a half degrees"; that it is a hazardous operation both uphill and downhill against the motor, transmission and all parts of the operation, which would be productive of motor and transmission trouble, which would be increased if road conditions were bad, and testified further that because of road conditions in that area during January, February and March of 1945, there would be difficulty in operating and maintaining bus schedules over the company's run.

We are of the opinion that under these circumstances —abnormal weather conditions, wartime controls and

wartime scarcity—it cannot be said that the company failed to furnish and maintain *adequate, efficient* and *reasonable* service and facilities. The qualifying adjectives must be construed to have their meaning and connotative value in the light of the times, and what is not *adequate,* or not *efficient,* or not *reasonable* in normal, ordinary times might well be considered so to be in war time. The commission should have taken cognizance of the conditions existing in this case and rendered its judgment in the light of circumstances which were beyond appellant's control. Tested by that standard, we think the evidence falls far short of showing that appellant failed to provide the service required of it.

In hearings before the commission all parties must be apprised of the evidence submitted, and must be given opportunity to cross-examine witnesses; to inspect documents and to offer evidence in explanation or rebuttal according to well understood rules. In no other way can a party maintain its rights, or make a defense, or test the sufficiency of the facts to support the finding. *Philadelphia Rapid Transit Co. v. Public Service Commission,* 78 Pa. Superior Ct. 593. And while the commission is an administrative body, and even where it acts in a quasi-judicial capacity and is not limited by the strict rules as to the admissibility of evidence which prevail in suits between private parties, the more imperative it is to preserve the essential rules of evidence by which rights are asserted or defended. *Interstate Commerce Commission v. Baird,* 194 U. S. 25. Otherwise, even though it appeared that the order was without evidence, the manifest deficiency could always be explained on the theory that the commission had before it extraneous, unknown, but presumptively sufficient information to support the finding. *United States v. Baltimore & Ohio S. W. R. R.,* 226 U. S. 14; *Interstate Commerce Commission v. Louisville & Nashville R. R.,* 227 U. S. 88, 93.

In the case at bar the commission stated in its order: "We are impelled to take notice of similar proceedings

instituted by us on February 24, 1941, at C. 13484 involving the respondent in the instant proceedings. Then, as now, our action resulted from the inability of the Shenandoah Suburban Bus Lines, Inc., to provide adequate or reasonable service as a result of the repeated mechanical failure of its equipment. The major facts developed in each proceeding are strikingly similar and it is difficult to believe that such similarity is mere coincidence. Rather it appears to be indicative of the inability or the unwillingness on the part of the respondent to so conduct its operations as to insure continuous reasonable and dependable service." The matter referred to did not form a part of the rule, was not in evidence as part of the testimony and, therefore, was not properly before the commission and will not support in whole or in part its order in this case.

An examination of the record in this case discloses a lack of substantial evidence with rational and probative force to sustain the findings and order of the commission.

Order is reversed.