## Aizen, Appellant, *v.* Pennsylvania Public Utility Commission et al.

Argued April 19, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD, and FINE, JJ.

*James J. Davis, Jr.* and *Harold Scott Baile,* with them *John Sailer, John D. M. Hamilton* and *Pepper, Bodine & Stokes,* for appellant.

*Frank F. Truscott,* City Solicitor, with him *Abraham Wernick* and *G. Coe Farrier,* Assistant City Solicitors, for intervening appellant.

*Gabriel D. Weiss,* with him *Charles E. Thomas,* and *T. McKeen Chidsey,* Attorney General, for appellee.

*Bernard G. Segal,* with him *Irving R. Segal, Louis F. Floge, William A. Schnader* and *Schnader, Kenworthey, Segal & Lewis,* for intervening appellee.

OPINION BY RHODES, P. J., July 23, 1948:

This is an appeal from the order of the Pennsylvania Public Utility Commission of February 3, 1948, refusing Max Aizen, the appellant, a certificate of public convenience to render taxicab service upon call or demand in the city and county of Philadelphia. Appellant's application was one of ninety-six similar applications filed February 11, 1947, each involving the proposed operation of one vehicle.[1] The only question before the commission in this proceeding was the grant or refusal of additional certificates, the applicants alleging that the existing service was inadequate.

At the hearings before the commission, the ninety-six applicants, known as the Aizen group, were represented by the same counsel. A second group of sixty-four similar applications filed about the same time was designated as the Landa group. Protests against these applications were filed by the Yellow Cab Company of Philadelphia, by Local No. 156 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and by twelve individual operators. Pursuant to a stipulation of counsel for all parties, entered into in order to expedite the procedure before the commission, the matter of the character and fitness of each of the ninety-six applicants was presented during the week of August 6, 1947, by the use of questionnaires prepared in advance of the hearings.

In the Aizen application, ten witnesses testified during the week of April 17, 1947, as to the alleged need for additional service in Philadelphia; twenty-three during the week of September 15, 1947. Testimony in

---

[1] The record clearly shows that appellant's proposed service involved the operation of one taxicab to be available only to customers hailing it on the streets, and not in response to telephone calls.

the Aizen application was incorporated by reference in the other ninety-five applications. During the week of May 11, 1947, eleven witnesses were produced on behalf of the Landa group, which testimony was also considered by the commission in connection with the Aizen application.

Yellow Cab Company, one of the protestants, presented a total of one hundred and forty-six witnesses who testified on its behalf during the period of October 14 through October 24, 1947, which evidence was also incorporated by reference in all of the other cases. On February 3, 1948, the commission, in a majority report by Commissioner Siggins, made an order refusing the Aizen application. Commissioner Houck filed a concurring opinion, and Commissioner Conly a dissenting opinion.

In refusing the applications of appellant and the others in the Aizen group, the commission in its report and order reviewed the history of taxicab regulation in Philadelphia as shown by former cases on its own dockets. It also discussed in detail the testimony of each of the witnesses for applicants, as well as all the testimony offered by protestants.

In order to ascertain what steps operators were taking to return to a prewar basis of service, the commission, on January 22, 1946, initiated an investigation of its own motion into taxicab service in Philadelphia generally and held many hearings. In its report and order of December 2, 1946, following this investigation the commission found that any company which purported to give the public in Philadelphia proper taxicab service must have adequate telephone facilities, that it would be impossible for individual operators to meet such requirements, that to set up a competing company with substantially similar facilities would duplicate costs, and result in harmful competition and impairment of service to the public. The commission found that, as of December 2, 1946, taxicab service

in Philadelphia was "quantitatively although not qualitatively inadequate," and ordered Yellow Cab Company to purchase new cabs as rapidly as possible for replacement and to augment its existing fleet,[2] and to keep a monthly record of telephone calls received and serviced, as well as the number of cabs in daily use in excess of ten hours each day.

In the order refusing the present application, the commission found: "The reports filed with the Commission pursuant to its order of December 2, 1946, indicate that practically all of Yellow Cab's wartime equipment has since been replaced by new cabs and that, except during periods of rainy or stormy weather, and when unusual events produce peak demands greatly in excess of ordinary periods, the cab company's response to telephone orders is practically back to its pre-war basis, when the company's service was concededly satisfactory in every respect." [3]

The commission found that the placing of additional cabs of independent operators upon the streets in the downtown district would not only fail to remedy any existing inadequacy in telephone service, but would be detrimental to the development of the coördinated service rendered by Yellow Cab Company, and therefore detrimental to the public interest. It also found that there was ample coverage of downtown Philadelphia by cruis-

---

[2] The commission in its order of February 3, 1948, said: "At the conclusion of the hearings in the Commission's investigation proceedings, Yellow Cab Company of Philadelphia was operating 1,164 cabs. That was in April 1946. The present record shows that by the end of 1946, the number had been increased to 1,357, and, by September 30, 1947, to 1,700. And, according to the reports filed with the Commission by the company, the present complement of cabs operated by Yellow is 1,800." (N.T. 453-459, 16a-17a)

[3] Yellow Cab Company's records reveal that prior to the war it serviced an average of 94.8 per cent of all telephone orders received over a five-year period. During the six months preceding the hearings in this case, the company serviced an average of 94.1 per cent of all telephone orders. In July, 1947, it reached a postwar peak of 96.2 per cent. (N.T. 834-835; Y.C. Ex. No. 138)

ing taxicabs, and that there could be no better test of adequacy than the company's "ability in normal weather to serve as high a percentage of all telephone calls offered as they now are doing, and a flow of empty cabs at the pivotal points in the City's downtown business district at intervals of about a minute." It is undisputed, as the commission points out, that the applicants would not afford telephone service throughout the city, but would confine their activities to the downtown business district. The commission concluded with the finding "that the granting of additional certificates of public convenience would be detrimental to the further development of a coördinated taxicab service in Philadelphia."

We allowed the City of Philadelphia to intervene as an appellant and the Yellow Cab Company as an appellee. Arguments and briefs have been presented on behalf of the intervening appellant and the intervening appellee.

We think that the present appeal is controlled by the principles set forth at length in our recent case of *Yellow Cab Company et al. v. Pennsylvania Public Utility Commission et al.*, 161 Pa. Superior Ct. 41, 54 A. 2d 301. In that case, involving the taxicab service in Pittsburgh, we affirmed an order of the commission which granted an applicant, the Peoples Cab Company, Inc., the right to operate in an attempt to secure adequate taxicab service in Pittsburgh partly by regulated monopoly and partly by allowing limited competition. In the present case, the commission has concluded that the public interest for the time being requires a regulated monopoly and no further competition of the type proposed by appellant.

The gist of appellant's complaint is that the commission abused its discretion in refusing to grant appellant a certificate and in fostering Yellow Cab Company as the dominant operator. In the *Pittsburgh* case,

supra, 161 Pa. Superior Ct. 41, pages 45, 50, 51, 52, 54 A. 2d 301, pages 304, 306, 307, this Court stated:

"We have frequently said that the filling of an existing need in transportation facilities is an administrative question to be determined by the commission, and that its decision, if based on competent and relevant evidence, will not be disturbed by this Court unless it is so capricious, arbitrary, or unreasonable as to amount to error of law or a violation of constitutional rights. . . . The propriety of permitting competition in the same field is peculiarly one within the discretion of the commission; this is true notwithstanding that the control of utilities as regulated monopolies, as opposed to destructive or unrestrained competition, has been a policy of this state recognized by legislative enactments and judicial interpretation thereof. . . . It is a general principle of utility law that competition will not be permitted among public utilities to such an extent as would defeat the purpose of the grant of the franchise and injure the public interest. At the same time, there is a certain latitude granted the administrative agency as to the extent of competition among franchised utilities which will best serve the public interest. . . . In the exercise of its administrative functions the commission could decide whether to bring about this result (1) by regulated monopoly—continuing a policy of noncompetition in the taxicab service for Pittsburgh, or (2) by directing appellant to improve its service, and in addition thereto granting a certificate to a competing carrier."

In *Hoffman et al. v. Public Service Commission,* 99 Pa. Superior Ct. 417, we affirmed an order of the public service commission refusing permission to incorporate and operate a taxicab company in competition with the existing facilities of the then Yellow Cab Company of Philadelphia. We there stated, page 429 of 99 Pa. Superior Ct.: "The propriety of permitting competition in the same field is peculiarly one within the discretion

of the Public Service Commission: Gongaware v. Pub. Serv. Com., 83 Pa. Superior Ct. 269."

We find no merit in the argument that there is a legal inconsistency between the commission's order in the *Pittsburgh* case and its action in the present case. In the *Pittsburgh* case the commission decided that some competition would best serve the public interest. In the present case the commission found that the proposed competition in the taxicab field in Philadelphia at the present time would not be in the public interest. In each case the commission acted entirely within the area of its administrative discretion as it believed the facts required. It does not appear that its action in the present case was arbitrary or unreasonable as a matter of law, and no error of law appears from the record.

There is ample evidence to support the commission's findings and order in the present case. The principal complaint of appellant's forty-four witnesses related to inadequate telephone service by Yellow Cab Company. There were isolated instances where Yellow Cab Company's downtown pick-up service was not adequate, according to these witnesses. As opposed to this, one hundred and forty-six witnesses, including representatives of the city's principal railroads, hotels, hospitals, apartment houses, theatres, stores, and restaurants, testified to the adequacy of Yellow Cab's service under ordinary conditions. In addition, statistics furnished by Yellow Cab Company showed that during the preceding six months 94 per cent of telephone orders received had actually been serviced, and for some months ran as high as 96.2 per cent. This compared with a low of 57 per cent during the war. For a period between August 9 and August 28, 1947, Yellow Cab Company made a survey of various downtown locations where taxi demand was particularly heavy. These points included the Bellevue-Stratford, Benjamin Franklin, Adelphia, Warwick, and Barclay hotels, Wanamaker's Store, etc. This survey showed that, when it was not raining, an

available cab (including independents then operating) passed a given point, at the busier locations, at an average interval of less than one minute, and at the least busy places every three and a half minutes. Even during hours of rain, the elapsed time between cabs at these busier locations was approximately two minutes, as contrasted with one minute in fair weather.

The commission reasonably concluded from this evidence that the certification of additional individual operators of single cabs would not only fail to improve any existing inadequacy in Yellow Cab Company's telephone service, but would draw off the "cream" of the downtown business, thereby disrupting Yellow Cab Company's coördinated telephone service which covers the entire city. Whether the service proposed by appellant is in the public interest is an administrative question for the commission to determine. The majority of the commission decided that question in the negative. The commission's findings supported by substantial evidence with rational probative force are conclusive and may not be disturbed by us on appeal. *Horn's Motor Express, Inc., v. Pennsylvania Public Utility Commission,* 148 Pa. Superior Ct. 485, 487, 26 A. 2d 346; *Metropolitan Edison Company v. Public Service Commission et al.,* 127 Pa. Superior Ct. 11, 16, 191 A. 678; *Shenandoah Suburban Bus Lines, Inc., Case,* 158 Pa. Superior Ct. 638, 641, 46 A. 2d 26, 355 Pa. 521, 50 A. 2d 301. Where it clearly appears that the commission has acted within the limits of its discretionary powers, this Court may not disturb the commission's order unless it is shown that there was a lack of evidence to support the findings and order or other error of law, or a violation of constitutional rights. *John Benkart & Sons Co. et al. v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 5, 8, 7 A. 2d 584; *Armour Transportation Co. v. Pennsylvania Public Utility Commission,* 154 Pa. Superior Ct. 21, 24, 34 A. 2d 821; Act of May 28, 1937, P. L. 1053, Article XI, § 1107, as amended by the Act of July 3, 1941, P. L. 267, § 3, 66 PS § 1437.

Appellant also complains that the commission failed to find specifically that taxicab service as presently existing in Philadelphia was adequate. Appellant argues the commission in reality found that inadequacy did exist, as shown by the commission's own order of December 2, 1946, ordering Yellow Cab to increase its fleet and take other measures to improve its service. Sufficiently specific and definite basic findings to enable us, as an appellate court, to review the case and pass upon the legal questions involved are a necessary requisite of a valid order by the commission. *Alko Express Lines v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 27, 34, 35, 30 A. 2d 440. The commission's report and order in the present case fully met this requirement. The commission found that there was adequate taxicab coverage of downtown Philadelphia; that the number of telephone calls serviced in 1946 by Yellow Cab Company was 2,910,544, and that the response to telephone calls had reached the satisfactory prewar average of 93 to 96 per cent; that any existing inadequacy in the taxicab service in Philadelphia would be in the failure of operators to answer telephone calls promptly; that certification of appellant would not remedy this deficiency if it existed; that such certification would be detrimental to the public interest as it would result in substantial interference with Yellow Cab Company's coördinated service. Appellant argues that the commission should have remedied any existing inadequacy in service by granting additional certificates and not by continued regulation of Yellow Cab Company as a predominant monopoly. As to this the answer is twofold: (1) The commission has found against appellant on the factual issue; (2) the matter is within the administrative discretion of the commission.

The commission, in granting certificates of public convenience, performs a legislative function, and exercises a power delegated to it by the legislature. *Horn's Motor Express, Inc., v. Pennsylvania Public Utility*

*Commission,* supra, 148 Pa. Superior Ct. 485, 487, 26 A. 2d 346. "A certificate of public convenience shall be granted by order of the commission, only if and when the commission shall find or determine that the granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public; . . ." Act of May 28, 1937, P. L. 1053, Article II, § 203, 66 PS § 1123. It is authorized to determine, in the exercise of its administrative functions, when and to what extent an existing utility actually engaged in rendering a public service shall be protected from competition, or to what extent competition may be necessary to secure adequate service to the public. Any policy declared by the legislature or determined by such a designated agency as the commission is subject to the scrutiny of the courts and may not contravene constitutional limitations. *Metropolitan Edison Company v. Public Service Commission et al.,* supra, 127 Pa. Superior Ct. 11, 20, 191 A. 678; *West Penn Railways Co. v. Pennsylvania Public Utility Commission,* 135 Pa. Superior Ct. 89, 99, 4 A. 2d 545; *Pennsylvania Railroad v. Driscoll et al.,* 336 Pa. 310, 334, 9 A. 2d 621. As Commissioner Houck pointed out in his concurring opinion, the majority report of the commission contains some broad language as to policy which we cannot approve. In the majority report there are several superfluous statements to the effect that the granting of the present applications would be a reversal of the policy as set forth in the *Application of Cowan,* Application Docket No. 20708, 13 P.S.C. 428 (1934), and that the commission was thereby reaffirming "the policy declared by the commission in [that] case." In the *Cowan* case the commission said: "The change in conditions [in Philadelphia] is sufficient to justify the establishment of a policy, which is hereby announced, of refusing to approve any further applications by individuals for this limited class of service [operating a taxicab from some specified stand], or for approving any increase in the

number of cars which the present carriers may operate, or of transferring their certificates to others when they discontinue the business, whether through death or otherwise."

The commission, in matters within its administrative discretion, may adopt and follow a policy, but the exercise of such discretion is not without some limitation. Its findings and orders must be based upon the evidence in the case before it. "The commission's power to act by way of order requires findings of fact, based on the evidence, necessary to support the order": *West Penn Railways Co. v. Pennsylvania Public Utility Commission,* supra, 135 Pa. Superior Ct. 89, 99, 4 A. 2d 545, 549.[4] A previously adopted policy may not furnish the sole basis for the commission's action in a particular case. Policy cannot be made a substitute for evidence in a proceeding before it. The conditions of a particular case may require the reversal of any administrative policy. No declared regulatory policy by the commission may preclude the future exercise of its functions as an administrative agency of the legislature. Such a declaration of policy cannot be a finality regardless of circumstances. See *Erie Lighting Co. et al. v. Pennsylvania Public Utility Commission,* 131 Pa. Superior Ct. 190, 196, 198 A. 901. Orders of the commission are not to be determined by abstractions. The commission must remain free at all times in order to carry out the objectives of the utility law. In some instances, as in the *Pittsburgh* case, the facts may show that some competition rather than regulated monopoly is necessary for the service, accommodation, and convenience of the public. In the present case there is sufficient evidence in quality and quantity to support the commission's findings and order.

The order of the commission is affirmed.

Judge RENO dissents.

---

[4] Some purely administrative orders need not be supported by findings of fact. Pittsburgh v. Pennsylvania Public Utility Commission, 145 Pa. Superior Ct. 580, 20 A. 2d 869.