New York Central Railroad Company, Appellant, *v*. Pennsylvania Public Utility Commission.

298

Argued April 13, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Irving Murphy*, with him *Gifford, Graham, Mac-Donald & Illig*, for appellant.

*Anthony L. Marino*, Assistant Counsel, with him *Joseph I. Lewis*, Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

OPINION BY MONTGOMERY, J., June 15, 1961:

On September 7, 1959 the appellant and The New York, Chicago and St. Louis Railroad Company filed their joint application with the commission "for approval of the installation of automatic flashing light signals and short-arm gates in lieu of the protection presently afforded by a crossing watchman on duty twenty-four hours daily at the crossing at grade where the tracks of said Companies cross Smedley Street, in the Borough of North East, Erie County." The application alleged greater safety and financial savings as reasons therefor. A protest was lodged with the commission by the Borough of North East which alleged that the present manually operated gates were ample and that the automatic installation would create a dangerous hazard to the traveling public.

After hearing, the commission concluded that ". . . because of the large number of movements on the tracks of the railroad companies daily, the fast rate of speed of the trains over the crossing, and the length of the crossing consisting of 152.15 feet, together with the accident-free record now existing at the crossing, the continued maintenance of the existing crossing protection at the crossing is necessary," and it made the further finding ". . . that the installation . . . is not necessary or proper for the service, accommodation, convenience, or safety of the public." It thereupon denied the application. Separate appeals were taken by the applicants but only that of The New York Central Railroad Company is before us at this time. By stipulation filed, the other appellant will abide by the decision in this appeal.

There are two questions before us. The first is whether the commission acted arbitrarily and capriciously in denying the application without sufficient evidence to support its findings, conclusions, and order. The second is whether appellant was denied due

process because of the fact that the commission went beyond the record in making its decision.

In matters of this nature brought under the "railroad crossing" sections (sections 409, 410, 411) of the Public Utility Law 66 P.S. 1179 et seq., the power of the commission is broad and exclusive. *New York Central Railroad Company v. Pennsylvania Public Utility Commission*, 184 Pa. Superior Ct. 610, 135 A. 2d 786; and courts are reluctant to substitute their judgment for that of the commission. It is only in cases involving a manifest and flagrant abuse of discretion that courts are warranted in reversing the commission. *Posten Taxi Company v. Pennsylvania Public Utility Commission*, 164 Pa. Superior Ct. 13, 63 A. 2d 424; *Aizen v. Pennsylvania Public Utility Commission*, 163 Pa. Superior Ct. 305, 60 A. 2d 443; *Harmony Electric Co. v. Public Service Commission*, 71 Pa. Superior Ct. 355.

In the *New York Central* case, supra, this Court approved the determination by the commission that automatically operated flashing light signals were superior in safety to automatically operated warning bells. In *Erie v. Public Service Commission*, 116 Pa. Superior Ct. 244, 176 A. 530, in affirming the order of the commission in approving the installation of automatic signals of the latest design to be operated 24 hours a day in lieu of safety gates and watchmen on duty a portion of the day, this Court said at page 249: "There was evidence showing the relative merits of the different systems of protection, the extent and nature of the traffic over the crossings in question, and the character of properties in the vicinity. This presented a purely administrative question and it was for the public service commission and not this court to determine the controversy."

Appellant's argument appears to be based on the contention that there is no evidence in this case to show

the merits of the old system and therefore the commission abused its discretion by ignoring the only evidence in the case which related to the merits of the proposed new system. We cannot accept appellant's argument, unless we are prepared to say that in every case automation is better than personal supervision.

The record before us contains much evidence from which the commission could find facts in support of its order. It is admitted that the present system has stood the test of time and that by its use a perfect no-accident record has been established at this crossing for more than five years. There is an absence of testimony that the conditions at the crossing which prevailed during the establishment of that record have in anywise changed or will change in the future. The special problems of the crossing are fully described in the record, viz.—its width of 152.15 feet with seven tracks, three of the one appellant and four of the other, the two sets divided by a 70 foot area, the location of the towers from which the watchmen observe the traffic on the railroad as well as on the highways crossing same, the approach of the streets, the location of trees and other buildings, the traffic flowing across the area, etc.

The record also shows evidence emphasizing the strong as well as the weak features of each system. The appellant has emphasized the weakness of the present system because of recognized human frailities. However, it had to admit that mechanical failures in the proposed system might occur also. It pointed out however, in this connection, that safeguards would be set in motion should such failures occur. The safeguards are the substitution of a battery system when there is an electric power failure, the falling of the gates into a horizontal position if the battery then fails, and finally the stopping of the train on the failure of all safeguards. It emphasized the strong features of the automatic system by giving statistics to support its conten-

tion. However, the statistics were for the most part general in nature, whereas the decision the commission had to make was in relation to this particular crossing.

On the other hand the protestant offered evidence to prove the advantage of the present system by pointing out the personal attention and warnings by voice and bell which were given frequently to the users of the crossing by the attendants of the gates.

We have no doubt that the annual savings to the railroad in the operational costs of this crossing would be material if the new system were installed. From that point of view it might be desirous to permit the change in system. However, the safety of the public is the controlling factor, not economy. (Section 409 (b), 66 P.S. 1179 (b)).

Appellant had the burden of satisfying the commission that its proposed installation was necessary for the prevention of accidents and the promotion of the safety of the general public at this crossing, which it has failed to do. Even though we were inclined to differ with the conclusions reached by the commission, we are not privileged to substitute our judgment for theirs; and since our review of the record indicates sufficient evidence to support its findings, conclusions, and order refusing appellant's application, its order will be affirmed.

We find no basis for appellant's second argument that the commission went beyond the record, and by doing so deprived it of due process of law. Appellant's argument is based on a slip of paper supposedly attached to the order of the commission with the following legend thereon: "Order A.86756 submitted by Bureau of Transportation." This slip of paper is mentioned for the first time in appellant's brief. The attention of the commission was not previously directed to it and it has not been made part of the record. However, the only significance we see that can be attached

to it is that the record was submitted to the Bureau of Transportation for study and advice. The Bureau of Transportation is part of the Public Utility Commission. In *Smith v. Pennsylvania Public Utility Commission*, 192 Pa. Superior Ct. 424, 162 A. 2d 80, this Court, in considering the question of due process in a matter of similar nature, speaking through RHODES, P. J., said at page 430: "That the commission may have given consideration to a staff report in its decisional process does not, in itself, overcome the presumption that the commission considered the testimony of record and all of the controverted points in its deliberation of the case. . . . Because of the volume of work before the commission, it must necessarily rely upon its official staff facilities in hearing and reviewing the matters before it."

That explanation applies to the appellant's objection on the point of lack of due process in the present case.

Order affirmed.

---

DISSENTING OPINION BY WATKINS, J.:

I would reverse and direct the commission to approve the automatic signal equipment. The commission and this Court should, as it has done in the past, take judicial notice of the economic plight of the railroads and grant applications such as this, where the evidence is clear that without sacrificing safety, but in fact improving it, substantial savings can be made by the railroad.

This is an example of action by the commission that is motivated by the well meaning, sympathetic desire that moves all of us to save the jobs that will be destroyed by automation but it flies in the face of overwhelming testimony as to the efficacy of the automatic equipment and the savings that can be accomplished,

and so becomes an arbitrary, capricious and unreasonable exercise of administrative discretion.

ERVIN, J., joins in dissent.